IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL LEE,                              )
                                       )
              Plaintiff,               )
                                       )
         vs.                           )     Civil Action No. 04-1013
                                       )
UNITED STATES DEPARTMENT OF            )
JUSTICE,                               )
                                       )
              Defendant.               )


<u>MEMORANDUM OPINION</u>

BLOCH, District J.

     Defendant has filed a motion for summary judgment
(document No. 44) in this action.  For the reasons set forth
below, this motion is granted in part and denied in part, and,
accordingly, Counts II, III, IV, VII, and XII of Plaintiff's First
Amended Complaint are hereby dismissed with prejudice.

**I.      <u>Background</u>**

     Plaintiff's claims in this case essentially fall under
two categories.  Part I of the First Amended Complaint ("Amended
Complaint" or "Am. Compl.") sets forth 8 counts in which Plaintiff
alleges that Defendant violated the Freedom of Information Act, 5
U.S.C. § 552 ("FOIA") and the Privacy Act of 1974, 5 U.S.C. § 552a
("PA") by refusing to provide him with records that he requested
from various agencies which are components of the Department of

Justice ("DOJ") pursuant to those statutes.  In particular, Count I pertains to requests under the FOIA and PA to the United States Marshals Service ("USMS"); Count II pertains to requests to the Executive Office for United States Attorneys ("EOUSA"); Counts III and IV pertain to requests to the Federal Bureau of Investigation ("FBI"); Count V pertains to requests to the Federal Bureau of Prisons ("BOP"); and Count VII pertains to requests to the Office of Information and Privacy ("OIP").  Part II (Counts IX through XI and Count XII) of the Amended Complaint contains allegations regarding the interrogation of Plaintiff by DOJ agents and the disclosure of an affidavit by the DOJ to third parties.[1]

### A.  <u>Count I</u>

On August 4, 2003, the USMS received a letter from Plaintiff dated July 1, 2003, requesting:

> all documents within the following locations that relate to me, mention me, or otherwise list my name:
>
> 1.  Western District of Pennsylvania
> 2.  Southern District of West Virginia
> 3.  Northern District of West Virginia
> 4.  Eastern District of Kentucky
> 5.  Western District of Kentucky
> 6.  Middle District of Pennsylvania
> 7.  District of Maryland
> 8.  District of Columbia
> 9.  EOUSA HQ
> 10. Northern District of New York
> 11. Southern District of New York
> 12. All Districts within Ohio

---

[1]     On January 18, 2005, the Court granted Plaintiff's motion to voluntarily dismiss Counts VI and VIII of the Amended Complaint.

(Declaration of Florastine P. Graham ("Graham Declaration" or "Graham Decl.") at ¶ 2, Ex. A)).[2]  By letter dated August 5, 2003, the USMS acknowledged the receipt of Plaintiff's request and informed him that a search for responsive documents had commenced and that he would be contacted when the processing was complete. (Graham Decl. at ¶ 3).

The search for records pertaining to Plaintiff was conducted in the thirteen district offices identified in his request.  To aid in this search, each USMS office was supplied with Plaintiff's date of birth, social security number, and prisoner number, all of which were provided by Plaintiff.  (Id. at ¶ 4).

As a result of the search conducted by the specified USMS offices, 88 pages of records pertaining to Plaintiff were located in the Northern District of West Virginia and the Middle District of Pennsylvania in the Prison Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007, systems of records.  Records maintained in these systems are compiled for law enforcement purposes in connection with USMS

---

[2]     Most of the declarations in this case were filed as exhibits to Defendant's Statement of Material Facts Filed in Connection with Its Forthcoming Motion for Summary Judgment with Regard to Counts I through VII of Plaintiff's Amended Complaint ("Statement of Material Facts" or "SOF").  For the sake of clarity, the Court will simply identify these Declarations by the name of the person giving the Declaration.

receipt, processing, transportation, and custody of prisoners; the execution of Federal arrest warrants; and the investigation of fugitive matters, and they are exempt from access provisions of the Privacy Act.  Thus, to provide maximum access, Plaintiff's records were processed for disclosure pursuant to the FOIA. (Graham Decl. at ¶ 6).

By letter dated November 6, 2003, the Office of General Counsel ("OGC") informed Plaintiff that it had located documents that may be responsive to his requests and indicated that he should complete the enclosed Certification of Identity form, DOJ-361 and return the form to the USMS.  The letter further stated that upon receipt of that information, the OGC would correspond further with Plaintiff regarding his request.  (Id., Ex. D). Although Plaintiff initially appealed this request to the FOIA/PA Appeals Officer for the OIP (Id., Ex. E), he did, on November 24, 2003, complete and return the DOJ-361 form.  (Id. at ¶ 8, Ex. F).[3]

By letter dated December 15, 2003, the USMS released to Plaintiff 83 of the 88 records located in response to his request, 17 of which were disclosed with deletions pursuant to 5 U.S.C. § 552(b)(7)(c).  (Id. at ¶ 9, Ex. G).  Five documents were referred to the EOUSA.  (Id.).

---

[3]    This appeal was dismissed as moot on January 30, 2004. (Graham Decl., Ex. H).

Plaintiff filed an administrative appeal of the USMS's action on his request by a letter dated December 29, 2003, and the OIP, which is responsible for FOIA/PA appeals within the DOJ, subsequently closed this appeal by letter dated March 23, 2004 in response to Plaintiff's Amended Complaint.  (Id. at ¶ 11, Ex. I, K).[4]

In light of Plaintiff's statements in his Brief in Opposition to the Government's Motion for Summary Judgment as to Count I ("Plaintiff's Brief as to Count I" or "Pl. Brief as to Count I"), in which he alleged that the USMS had not conducted an adequate search, the USMS conducted a second search for records relating to Plaintiff.  (Declaration of William E. Bordley ("Bordley Decl.") at ¶ 6).  In particular, Plaintiff claimed in his brief that records relating to him existed pertaining to a case involving Keith Maydak.  (Pl. Brief as to Count I; Bordley Decl. at ¶ 6).  Accordingly, the USMS searched by hand its files regarding Maydak, which had already been collected based on a prior FOIA/PA request made by Maydak, for records regarding Plaintiff.  Moreover, a second search was made in the Western District of Pennsylvania, the Eastern District of Kentucky, and the USMS Headquarters Investigative Services Division.  The search

_____

[4] While Plaintiff served Defendants with the Amended Complaint on October 9, 2003, he failed to file it with the Court at that time. It was not filed until July 12, 2004.  Nevertheless, Defendant acted in reliance upon the Amended Complaint from the date it was served.

including searching not only for records indexed to Plaintiff's name, but also for records on Plaintiff in the files of Maydak and another file regarding a threat made against Judge Alan Bloch. (Bordley Decl. at ¶¶ 6-8).

Based on the additional searches, the USMS, by letter dated March 31, 2005, provided a supplemental response to Plaintiff's requests.  (Id. at ¶ 9; Declaration of Arleta Cunningham ("Cunningham Decl.") at ¶ 4, Ex. A).  The USMS informed Plaintiff that 488 pages of documents had been located which were responsive to his request.  Of the 488 pages, 234 pages orginated with, or had information that originated with, other agencies, and these pages were referred to those agencies.  The USMS disclosed 144 pages to Plaintiff in their entirety and 93 pages with information excised and withheld pursuant to various provisions of 5 U.S.C. § 552(b).  The remaining 17 pages were withheld in their entirety.  (Bordley Decl. at ¶ 9; Cunningham Decl. at ¶ 6, Ex. A).

**B.  Count II**

Plaintiff submitted a FOIA/PA request to the EOUSA for processing by letter dated July 1, 2003, requesting:

> all documents within the following locations
> that relate to me, mention me, or otherwise
> list my name:
>
> 1.  Western District of Pennsylvania
> 2.  Southern District of West Virginia
> 3.  Northern District of West Virginia
> 4.  Eastern District of Kentucky
> 5.  Western District of Kentucky
> 6.  Middle District of Pennsylvania

6

      7.  District of Maryland
      8.  District of Columbia
      9.  EOUSA HQ
      10. Northern District of New York
      11. Southern District of New York
      12. All Districts within Ohio

(Declaration of Mary Beth Uitti ("Uitti Decl.") at ¶ 10, Ex. E).

By letter dated August 13, 2003, the EOUSA acknowledged receipt of Plaintiff's request, but asked that Plaintiff identify the specific United States Attorney's Office(s) in which he believed the requested records existed.  To this end, Plaintiff was informed that these would primarily be the district(s) in which prosecution or litigation occurred, and advised him to submit a new request for documents after he corrected for the deficiencies in his original request.  (Id. at ¶ 11, Ex. F).  In asking Plaintiff to frame a new request, the EOUSA instructed Plaintiff to designate three districts for an initial search.  He was told that when fees were paid for these searches, the EOUSA would proceed with the next three districts, repeating the process until all districts had been searched.  (Id. at ¶ 11, Ex. F).  The letter further stated that the EOUSA is required to charge fees for the time used to search for documents and for duplication of pages released.  Defendant was not, however, asked to pay any fees prior to the initial searches and was, in fact, specifically instructed not to send any payment at that time.  (Id. at ¶ 11, Ex. F).

Plaintiff did not follow these instructions, instead filing an appeal of the EOUSA's determination with the OIP by letter dated September 2, 2003.  (Id. at ¶ 12, Ex. G).  In his appeal, Plaintiff argued, inter alia, that there was nothing in the FOIA or PA that permitted the EOUSA to require him to limit his request to three locations at a time and that he was not required to make a piecemeal request.  He further argued that the PA does not permit fees for time spent searching for records requested under that act.  Subsequently, by letter dated January 6, 2004, the OIP informed Plaintiff that it was closing its file on his appeal because Plaintiff had filed a complaint for judicial review in district court.  (Id. at ¶ 12, Ex. H).

### C.  Counts III & IV

By two letters dated July 1, 2003, Plaintiff submitted FOIA/PA requests to the FBI's Pittsburgh field office and to FBI headquarters in Washington, D.C. requesting certain information.  (Declaration of Paul Lee as to Counts III & IV ("Lee Decl. (III & IV)") at ¶ 2, Exs. C, D).  Although the FBI's Pittsburgh field office and FBI headquarters claim that they have no record of having received the FOIA/PA requests that are referred to in Counts III and IV (Declaration of David Hardy ("Hardy Decl.") at ¶ 9), Plaintiff has produced evidence demonstrating that copies of his requests were received by both FBI offices and subsequently returned to him in an envelope post-marked August 1, 2003.  (Lee

8

Decl. (III & IV), Exs. A-D).  Nothing else was contained in the envelope containing the returned requests.  (Id. at ¶ 4).

The copies of Plaintiff's requests were signed "Paul Lee," list a Pennsylvania address, state Plaintiff's date of birth, and provide his social security number.  They do not include Plaintiff's place of birth or his middle name.  (Lee Decl. (III & IV), Exs. C, D).

The FBI maintains that Plaintiff's requests were deficient and that, upon receipt of Plaintiff's verification of identity, coupled with a renewed request for information from FBI Headquarters and any field office which Plaintiff believes may have responsive records, the FBI will process Plaintiff's request. (Hardy Decl. at ¶¶ 8-10).

### D.  **Count V**

In a declaration provided by Deborah A. Terrell, a paralegal specialist for the BOP, the BOP maintains that it first learned of the FOIA/PA request propounded by Plaintiff upon the agency through his filing of the Amended Complaint.  (Declaration of Deborah A. Terrell ("Terrell Decl.") at ¶ 2).  Plaintiff alleges that he made a request for records relating to himself by letter to the BOP dated July 23, 2003.  (Plaintiff's Brief in Opposition to the Government's Motion for Summary Judgment with Respect to Count V ("Pl. Brief as to Count V") at 1).

9

On October 21, 2003, the BOP informed Plaintiff by letter that it had been brought to its attention through his Amended Complaint that he was claiming to have filed an information request with the BOP.  It explained that, although the BOP had no record of such a request, it would process the request for records as described in the Amended Complaint.  The letter further stated that the BOP estimated that to process Plaintiff's request, over thirty different locations would need to be searched, involving a minimum of seven hours, and the estimated search cost would be $324.  Plaintiff was further informed that in accordance with 28 C.F.R. § 16.11(i)(2), he needed to make advance payment of $324 by check or money order before the BOP could begin processing his request.  Alternatively, Plaintiff was advised that he could narrow the scope of his search to minimize his payment obligation.  (SOF, Ex. 5).  Plaintiff has neither provided the requested payment nor narrowed the scope of the search, so no further action has been taken on his request by the BOP.  (Terrell Decl. at ¶ 3).

### E.  Count VII

By letter dated July 1, 2003, Plaintiff submitted a FOIA/PA request to the OIP requesting all documents relating to him, mentioning him, or listing his name.  (Declaration of Melanie Ann Pustay ("Pustay Decl.") at ¶ 3, Ex. A).  Plaintiff's request letter was received by the OIP on July 30, 2003.  (Id. at ¶ 3).

10

On July 31, 2003, the OIP FOIA specialist assigned to Plaintiff's request conducted a search of the computer database that the OIP uses to track all initial FOIA/PA requests and administrative appeals received by the OIP.  The search terms that were used were Plaintiff's first and last names, "Paul Lee," and his last name, "Lee."  Based upon the nature of the request and the experience and knowledge of OIP staff, the OIP determined that a search of the OIP database, using the referenced search terms, would reasonably capture the universe of any responsive records maintained by the OIP.  After completing this search, the OIP did not locate any records responsive to Plaintiff's request.  (Id. at ¶ 4).  Accordingly, Plaintiff was advised by letter dated August 6, 2003 that the OIP's search had yielded no responsive records.  (Id. at ¶ 5, Ex. B).

Subsequently, by letter dated August 16, 2003, Plaintiff administratively appealed the OIP staff's failure to locate responsive records, alleging that the OIP conducted an inadequate search.  (Id. at ¶ 6, Ex. C).  By letter dated November 3, 2003, the OIP notified Plaintiff that it had affirmed its initial determination.  (Id. at ¶ 8, Ex. E).

Plaintiff argues that the search was inadequate because a search of the OIP computer database could not have captured records unrelated to initial requests or administrative appeals, such as records relating to his participation in various FOIA/PA

11

lawsuits.  (Plaintiff's Brief in Opposition to the Government's Motion for Summary Judgment with Respect to Count VII of the First Amended Complaint ("Pl. Brief as to Count VII") at 1-2).  He alleges that the OIP monitors FOIA/PA lawsuits, publishes a biennial FOIA/PA guide, issues press releases related to FOIA/PA cases, and assists agencies in complying with FOIA/PA requirements.  (Id. at 1-2).

In her supplemental declaration, Melanie Ann Pustay explained that no OIP attorney has represented the Government in any litigation involving Plaintiff.  She further stated that there had been no occasion for the OIP's co-directors to have been consulted in the cases cited by Plaintiff.  (Supplemental Declaration of Melanie Ann Pustay ("Supp. Pustay Decl.") at ¶ 5).

### F.  Counts IX through XI

In regard to Counts IX, X, and XI, Plaintiff alleges the following:  On August 22, 2002, while incarcerated in a federal penitentiary in Kentucky, Plaintiff was placed in handcuffs by agents of the BOP and brought to a room where a Special Investigative Assistant employed by the BOP and a Deputy United States Marshal were present.  The agents instructed him that he was obligated to speak with and cooperate with them, but that the information he provided would be confidential and would not be disclosed.  He was questioned regarding his financial accounts and relationship with Keith Maydak.  As a result of the questioning, a

document entitled, "US Department of Justice Federal Bureau of Prisons Lexington KY 40511 AFFIDAVIT," ("DOJ Affidavit") was prepared by the agents and signed by Plaintiff at the direction of the agents.  (Am. Compl. at ¶¶ 51-59).  While the statements contained in the DOJ Affidavit at first appeared accurate to Plaintiff, he later determined that the statements, while accurate, were placed in an incorrect order that completely changed their meaning when placed in a clarified order.  (Am. Compl. at ¶¶ 60-61).

Subsequently, after the Marshals had learned of the location of Keith Maydak, agents of the DOJ provided, without Plaintiff's permission, a copy of the DOJ Affidavit to InvestorsBank, a financial institution maintaining accounts in Plaintiff's name.  (Am. Compl. at ¶ 65).  As a result of the disclosure of the affidavit, InvestorsBank refused to allow Plaintiff or his authorized agents access to accounts in his name. Plaintiff was unable to obtain his funds for a year, expending over $300 to regain access.  (Am. Compl. at ¶ 66).

Plaintiff alleges that the disclosure of the DOJ Affidavit was made in violation of the Privacy Act, 5 U.S.C. § 552a(b).  (Am. Compl. at ¶¶ 40-84).

### G.  Count XII

In regard to Count XII, Plaintiff alleges as follows: With respect to the questioning that led to the preparation and

13

signing of the DOJ Affidavit, the interrogation occurred despite
the agents' knowledge that Plaintiff had filed an invocation of
his Fifth Amendment right to counsel that specifically stated that
he did not wish to discuss his financial accounts with any agent
of the USMS outside of the presence of counsel.  (Am. Compl. at ¶
87).  After the filing of the present action, agents of the USMS
contacted Plaintiff's place of confinement and asked prison
officials to interrogate him about the lawsuit.  Prison officials
have advised Plaintiff that the USMS intends to interrogate him
again while he remains incarcerated.  (Am. Compl. at ¶ 89).
Accordingly, Plaintiff, who has not pursued any administrative
remedies in seeking to prevent future interrogation without
counsel during his incarceration, has asked the Court to enter a
writ of mandamus to forestall such interrogation.  (Am. Compl.,
Count XII).

II.      **Standard**

        In FOIA/PA cases, summary judgment is recognized as the
primary mechanism by which a district court will resolve the
issues presented.  See Misciavige v. IRS, 2 F.3d 366, 369 (11th
Cir. 1993) ("Generally, FOIA cases should be handled on motions
for summary judgment, once the documents in issue are properly
identified.").  Summary judgment shall be granted "if the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that there is

14

no genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).
A factual dispute is material only if it might affect the outcome
of the suit under the governing law.  Anderson, 477 U.S. at 248.
Whether a genuine issue of material fact is presented will be
determined by asking if "a reasonable jury could return a verdict
for the nonmoving party." Id.  Thus, "the court should review all
of the evidence in the record [and] ... must draw all reasonable
inferences in favor of the nonmoving party, and it may not make
credibility determinations or weigh the evidence." Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)
(citations and internal quotation marks omitted) (noting that
standard for judgment as a matter of law under Rule 50 is the same
as that for summary judgment).  The latter functions, along with
the drawing of legitimate inferences from the facts, are jury
functions, not those of a judge.  Id.  "Thus, although the court
should review the record as a whole, it must disregard all
evidence favorable to the moving party that the jury is not
required to believe."  Id. at 151.

        Where the non-moving party will bear the burden of proof
at trial, the moving party need not refute the essential elements
of the non-movant's case, but need only point out the
insufficiency of the non-movant's evidence offered in support of

15

those essential elements.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial.  <u>Id</u>. at 324.

**III.    <u>Discussion</u>**

          In this case, upon examination of the pleadings, briefs, statements of fact, and accompanying exhibits, and viewing the facts in a light most favorable to Plaintiff, this Court finds that there are no issues of material fact and that Defendant is entitled to judgment as a matter of law on Counts II, III, IV, VII, and XII of the Amended Complaint.  However, the Court finds that there are issues of material fact as to Count V and that summary judgment is therefore not appropriate as to that count.  Further, the Court finds that there are no grounds to dismiss Counts IX, X, and XI of the Amended Complaint.  Moreover, the Court will defer ruling on the motion in regard to Count I as discussed below.

**A.  <u>Count I</u>**

          Plaintiff, in Count I, alleges that the USMS's search of its records in response to his FOIA/PA request for all files referencing him was inadequate because it did not produce particular files that he believes are contained in the agency's records.  (Pl.'s Br. with respect to Count I at 3).  He further

16

argues that documents withheld pursuant to the USMS's second search were improperly withheld under the FOIA and PA.

At the outset, the strange procedural posture of this case as it pertains to this count must be addressed. Plaintiff's Amended Complaint, which was served on October 9, 2003, was served prior to receiving any records from the USMS, and was presumably based on the USMS's failure to provide any records. However, on November 6, 2003, the USMS (through the OGC) informed Plaintiff that it had located documents that would be released upon Plaintiff's completion of a Certification of Identity form, DOJ-361. (Graham Decl., Ex. D). Plaintiff initially appealed this request (Id., Ex. E), but he did, on November 24, 2003, complete and return the DOJ-361 form. (Id. at ¶ 8, Ex. F). Subsequently, on December 15, 2003, the USMS released to Plaintiff 83 of the 88 records located in response to his request, 17 of which were disclosed with deletions pursuant to 5 U.S.C. § 552(b)(7)(C). (Id. at ¶ 9, Ex. G). Five documents were referred to the EOUSA. (Id.). Plaintiff filed a second administrative appeal of the USMS's action on his request by a letter dated December 29, 2003, which was closed by letter dated March 23, 2004 since Plaintiff had served his Amended Complaint. (Id. at ¶ 11, Exs. I, K).

Therefore, the initial focus of Count I of the Amended Complaint was apparently a failure to produce any records. However, after serving the Amended Complaint, Plaintiff continued

17

to go through the administrative appeals process not once, but twice, after the USMS had indicated that it had records to disclose.  Hence, in opposing summary judgment in this case, the thrust of his argument was not that no documents had been produced, but that the search was inadequate.  Subsequent to, and indeed based on, Plaintiff's Brief as to Count I, the USMS performed a subsequent search based on information presented in Plaintiff's brief.  A much larger number of documents were found, and some of these were withheld based on various provisions of 5 U.S.C. § 552(b).  Plaintiff now opposes the withholding of some of these documents.

        Under the very unique facts of this case, the Court believes that Plaintiff must exhaust his administrative remedies via the administrative appeals process as to the USMS's second disclosure of records.  Plaintiff has exhausted his administrative remedies regarding the adequacy of the initial search.  However, his appeal did not encompass the entirely new set of issues raised in regard to the second search, nor has he filed an administrative appeal regarding that search.

        The Court notes that, ordinarily, a claimant is deemed to have exhausted his or her administrative remedies if the agency fails to comply with the applicable time limits of the FOIA.  See 5 U.S.C. § 552(a)(6)(C); Ruotolo v. Department of Justice, Tax

18

Division, 53 F.3d 4, 8-9 (2d Cir. 1995).[5]  The second search,
obviously, was far outside of the time limits prescribed by the
FOIA – if the applicable request was Plaintiff's initial request.
However, that search was premised on information that only became
apparent as a result of Plaintiff's filing of his brief as to
Count I.  This is not a situation where the agency is responding
for the first time to a request over a year later or in which the
agency is conducting a "piecemeal" search of records over an
extended period of time.  Indeed, there is no indication in the
record that the USMS was anything but finished with its search
before Plaintiff filed his Brief as to Count I.  As stated, the
second search was based on information that came out during
summary judgment briefing in this case.  Therefore, the second
search was more in response to Plaintiff's Brief as to Count I
than to his initial request.[6]  As such, the second search was
arguably pursuant to a new "request," i.e., the information
contained in Plaintiff's brief.

         However, regardless of whether the second search were to
be construed as a new search or as a continuation of the initial
search, the most appropriate avenue is to require Plaintiff to

----

[5]      There is no such "constructive" exhaustion of administrative
remedies under the PA.  See Anderson v. United States Postal Serv.,
7 F. Supp. 2d 583, 586 n.3 (E.D. Pa. 1998).

[6]      This is not to say that the second search has no bearing on
the adequacy of the first search.

exhaust his administrative remedies in regard to the issues raised by the second search.  The Court notes that where "exceptional circumstances" exist and where the agency is exercising due diligence in responding to the request, the Court may retain jurisdiction and allow the agency additional time to complete its review of the records.  See 5 U.S.C. § 552(a)(6)(C)(i).  Here, there is no question that the circumstances are exceptional, and the USMS is exercising due diligence in responding to Plaintiff's request.  The Court believes that retaining jurisdiction to allow the USMS additional time to complete the administrative appeal process regarding the second search is within the scope of allowing the agency to complete its review, since the appeal is part of the overall process of providing records under the FOIA/PA.

Indeed, this would not be the first time the parties participated in the administrative appeal process since this federal litigation commenced.  They have attempted to resolve their issues through this process before, and there is no reason they cannot do so now.  Indeed, the issues between the parties as to this count have already changed once since the service of the Amended Complaint, and may do so again as a result of administrative review.  The issues raised by the second search are completely different from those raised by the first search, and therefore, it would maximize judicial economy for the parties to

20

attempt to resolve these new issues during the administrative appeal process before addressing them with the Court.

The Court acknowledges that it is not deprived of jurisdiction as a result of the lack of an administrative appeal as to the new search.  See <u>McDonnell v. United States</u>, 4 F.3d 1227, 1240 n.9 (3d Cir. 1993); <u>Taylor v. United States Treasury Dep't</u>, 127 F.3d 470, 476-77 (5th Cir. 1997).  Rather, failure to exhaust administrative remedies is a "prudential consideration." <u>McDonnell</u>, 4 F.3d at 1240 n.9.  Accordingly, the Court will retain jurisdiction over this count and stay these proceedings pending the completion of the administrative appeal process.  At that time, the Court will take whatever further action is warranted as to this Count.[7]

**B.   <u>Count II</u>**

Plaintiff alleges in Count II that the EOUSA improperly withheld records by impermissibly instructing him to select just three offices at a time to be searched.  He argues that neither the FOIA, the PA, nor the published regulations under these acts allow for a limitation on the number of offices to be searched. The Court finds no merit in this argument.

---

[7]   The Court again notes that Plaintiff has exhausted his administrative remedies as to the initial search and need not do so again.  The administrative review here should be limited to issues regarding the withholding of documents pursuant to the second search.

21

Under FOIA/PA, a party making a request must "reasonably describe[]" the documents sought.  5 U.S.C. § 552(a)(3)(A).  In this vein, courts have clarified that an agency may ask that a party narrow the scope of his or her request.  See Rugiero v. United States Dep't of Justice, 257 F.3d 534, 548 (6th Cir. 2001).  In this case, it was permissible for the EOUSA FOIA/PA Office to request that Plaintiff narrow his request by designating three districts for the initial search, and then, after fees were paid for these searches, designating three more districts, repeating the process until all districts had been searched.[8]

Plaintiff further argues that he was not asked to narrow his search, but rather, was arbitrarily instructed to limit the number of offices where the search could be performed at one time.  However, the distinction Plaintiff attempts to draw is not relevant.  It is important to note that although Plaintiff was instructed to limit the number of offices to be *initially* searched, the EOUSA expressly advised him in its August 13, 2003 letter that, as long as the applicable fees were paid, all

---

[8]     Plaintiff notes in his brief that the EOUSA's statement that he would be charged search fees is improper, since search fees are not collectible for his PA requests.  While this is correct, the EOUSA's August 13, 2003 letter did not actually request the payment of search fees, and indeed, specifically advised Plaintiff not to send any payment at that time.  The EOUSA at no time refused to process a records request on the basis of unpaid fees.  Therefore, the fees which may be required under the FOIA and PA are not at issue; in fact, the allegations in Count II of the Amended Complaint are based not on any request for fees, but on the requirement that Plaintiff limit his search.

22

requested offices would eventually be searched.  Given the number
of offices Plaintiff requested to be searched, it was certainly
not unreasonable for the EOUSA to believe that the scope of the
request was overbroad, and the EOUSA, accordingly, explained in
its letter that he should attempt to identify the specific offices
where he actually believed records existed.  The EOUSA essentially
requested that Plaintiff narrow the scope of his initial request
to the three offices most likely to contain documents to maximize
the efficiency of the search.  Accordingly, the EOUSA's request
was permissible.

> ### C.  <u>Counts III & IV</u>

Although both the FBI's Pittsburgh field office and FBI
headquarters claim that they have no record of having received the
requests that are referred to in Counts III and IV of the Amended
Complaint, Plaintiff has presented evidence that he submitted
FOIA/PA requests to the FBI's Pittsburgh field office and FBI
headquarters, and that he received an envelope in response from
the FBI that contained a copy of each request, but no letter
explaining the action taken with respect to his requests.  (Lee
Decl. (III & IV), Exs. A-D).  Therefore, the Court, for purposes
of this motion, must accept that Plaintiff's requests were sent
and received by the FBI.  Nonetheless, since the requests did not
comply with the regulations governing FOIA/PA requests sent to the

FBI, Defendant is entitled to summary judgment on Counts III and IV.

For a FOIA/PA access request to be proper, it must be made in accordance with the agency's published regulations regarding, inter alia, procedures to be followed.  See 5 U.S.C. § 552(a)(3)(A)(ii); 28 C.F.R. §§ 16.3, 16.41(d); McDonnell v. United States, 4 F.3d 1227, 1236 (3d Cir. 1993) ("[Section] 552(a)(3) conditions the agency's duty [to make records available] upon receipt of a request that is made in accordance with published rules stating the time, place, fees, and procedures to be followed and that reasonably describes the records sought."); Taylor v. United States Treasury Dep't, 127 F.3d 470, 474 (5th Cir. 1997); Church of Scientology v. Internal Revenue Service, 792 F.2d 146, 150 (D.C. Cir. 1986) (stating that requesters must follow "the statutory command that requests be made in accordance with published rules").  Accordingly, a claimant who has failed to present a request comporting with the applicable regulations has failed to exhaust his administrative remedies because, as a technical matter, the agency at issue never denied a properly framed request for access to records.[9]  See Taylor, 127 F.3d at 474.  A court should exercise its discretion to excuse a

---

[9]   The Court notes that while Plaintiff did file an administrative appeal as to these counts, it is not the failure to exhaust the remedy of adhering to the appeal process, but rather, his failure to exhaust the remedy of submitting a valid request in the first place, that is at issue here.

claimant's failure to exhaust administrative remedies only in extraordinary circumstances, such as where:  (1) the unexhausted administrative remedy would be plainly inadequate; (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy; (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful); and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim.  See <u>id.</u> at 477.

In this vein, DOJ regulations require that an individual making an access request for his or her own records verify his or her identity by stating his or her full name, current address, and date and place of birth, and the requester's signature must either be notarized or submitted pursuant to 28 U.S.C. § 1746.  See 28 C.F.R. §§ 16.3, 16.41(d).  The purpose of the DOJ's regulations and the FBI's procedures is to ensure that documents are only released to an individual with a right of access to the information.  (Hardy Decl. at ¶ 8).

In this case, Plaintiff's requests did not conform to DOJ regulations.  First, Plaintiff's request was signed "Paul Lee," omitting his middle name, Alexander, and therefore did not set forth his full name.  Moreover, while Plaintiff's date of birth is provided in the request, his place of birth is not.

Accordingly, he did not make a proper request under the FOIA/PA. See 28 C.F.R. §§ 16.3, 16.41(d). Further, no extraordinary reasons justify his failure to exhaust the administrative remedy of submitting a request that comports with the applicable regulations.

Mr. Hardy states in his declaration that FOIA/PA requests made to the FBI are returned to the requester if they do not contain all of the items and background information necessary to proceed with an accurate search of FBI records, and that the requester will be instructed to provide any necessary information and/or a notarized signature or declaration before the FBI will proceed with a search. (Hardy Decl. at ¶ 8). This did not occur here, as the FBI did not provide instructions to Plaintiff about how he should correct the deficiencies in his requests. However, while it would have been advisable for the FBI to explain the deficiency, this does not change the fact that Plaintiff never made a proper request for records under 5 U.S.C. § 552(a)(3)(A)(ii). Plaintiff's requests were deficient regardless of the fact that the FBI failed to provide any explanation for the return of the requests. Accordingly, summary judgment is appropriate as to Counts III and IV.

### D.  **Count V**

Plaintiff asserts in Count V of his Amended Complaint that he submitted a request to the BOP seeking records relating to

himself.  (Pl. Brief as to Count V at 1).  However, the BOP avers
that it first learned of Plaintiff's request through his filing of
this FOIA/PA action.  (Terrell Decl. at ¶ 2).  Accordingly, an
issue of material fact exists regarding whether a records request
was, in fact, sent and received by the BOP,[10] and summary
judgment, therefore, is not warranted as to this count.[11]

### E. __Count VII__

Plaintiff submitted a request to the OIP seeking all
documents relating to him, mentioning him, or listing his name.
In response, the OIP FOIA/PA specialist assigned to Plaintiff's

---

[10]   Although Plaintiff has not filed an affidavit stating that
this request was sent, he does refer to the Amended Complaint, which
he claims is verified pursuant to 28 U.S.C. § 1746 and, therefore,
constitutes testimony in opposition to Defendant's summary judgment
motion.  While it is generally not sufficient to rely merely on the
allegations in a complaint to defeat summary judgment, here,
Plaintiff clearly is relying on the Amended Complaint not as a
complaint per se, but rather as an affidavit for purposes of Rule
56.  Especially in light of the fact that Plaintiff is proceeding
pro se, the Court finds that he, in relying on his verified Amended
Complaint, has shown, through the evidence of record, that there is
a genuine issue for trial.  See Celotex, 477 U.S. at 324.

[11]   While Defendant discusses steps taken after the commencement
of this litigation to address Plaintiff's request, this does not
change the fact that the BOP failed, according to Plaintiff, to
timely respond to the request when it initially received it.
Moreover, as Plaintiff points out, his requests were made under both
the FOIA and the PA.  Search fees, which the BOP required to be paid
prior to the commencement of any search, are chargeable only under
the FOIA and not the PA.  See 5 U.S.C. §§ 552(a)(4)(A)(ii),
552a(f)(5); 28 C.F.R. §§ 16.11, 16.49.  The fact that the record is
not clear at all as to whether the search for which Plaintiff was to
pay in advance was in response to Plaintiff's request under the
FOIA, the PA, or both, further demonstrates that summary judgment is
not warranted as to Count V.

request conducted a search of the computer database that the OIP uses to track all initial FOIA/PA requests and administrative appeals received by OIP.  The search terms that were used were Plaintiff's first and last names, "Paul Lee," and his last name, "Lee."  (Pustay Decl. at ¶ 4).  Plaintiff alleges that the OIP conducted an inadequate search because a search of its computer database could not have captured records unrelated to initial requests or administrative appeals.

For an agency to prevail on a motion for summary judgment in a FOIA/PA action, it must satisfy its burden of showing that its search was adequate and that any withheld documents fall within a statutory exemption.  See 5 U.S.C. § 552(a)(4)(B); Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994).  Because the agency is the possessor of the records and is responsible for conducting the search, the court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999).  See also Steinberg v. United States Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994).

Accordingly, affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and

giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden.  See Carney, 19 F.3d at 812; Maynard v. Central Intelligence Agency, 986 F.2d 547, 559-60 (1st Cir. 1993); Perry v. Block, 684 F.2d 121, 126-27 (D.C. Cir. 1982).  To this end, a district court must accord affidavits submitted by an agency a presumption of good faith.  Safecard Servs., Inc. v. Securities and Exchange Commission, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Thus, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary so long as the agency's submissions are facially adequate.  Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978).  When this is the case, the district court may "forgo discovery and award summary judgment on the basis of affidavits."  Id.  However, in the event that a review of the record raises substantial doubt, particularly in view of "well-defined requests and positive indications of overlooked materials," summary judgment is inappropriate.  Valencia-Lucena, 180 F.3d at 326.  See also Founding Church of Scientology v. National Sec. Agency, 610 F.2d 824, 830 (D.C. Cir. 1979).

The declaration of Melanie Ann Pustay, Deputy Director of the OIP, filed in this case sets forth the search terms utilized – Plaintiff's first and last names, "Paul Lee," and his last name, "Lee," as well as the database searched – the computer

database that the OIP uses to track all initial FOIA/PA requests and administrative appeals that it receives. She explains that the decision regarding how to structure the search was made by a specialist drawing upon considerable experience in conducting searches pursuant to the acts. The FOIA/PA specialist determined that a search of the database would "reasonably capture the universe of any responsive records maintained by OIP." (Pustay Decl. at ¶ 4). Defendant, therefore, has provided "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched," which is ordinarily sufficient to meet the Government's burden. See Valencia-Lucena, 180 F.3d at 326.

Plaintiff counters by attempting to provide evidence of "positive indications of overlooked materials." Specifically, he argues that the OIP possesses records regarding FOIA/PA litigation which were compiled in conjunction with its monitoring of FOIA/PA lawsuits, publishing of a biennial FOIA/PA guide, issuing of press releases related to FOIA/PA cases, and assisting of agencies in administering the FOIA/PA. He contends that if the OIP's search had been adequate, it would have produced records relating to his participation in various FOIA/PA lawsuits. (Pl. Brief as to Count VII at 1-2). However, in her supplemental declaration, Ms. Pustay explained that no OIP attorney has represented the Government in

any litigation involving Plaintiff.  She further stated that there had been no occasion for the OIP's co-directors to have been consulted in the cases cited by Plaintiff.  (Supp. Pustay Decl. at ¶ 5).

Further, there is no evidence that the OIP would have compiled records regarding Plaintiff in connection with its general duties of monitoring FOIA/PA lawsuits, publishing a biennial FOIA/PA guide, issuing press releases related to FOIA/PA cases, and assisting agencies in administering the FOIA/PA.  By Plaintiff's logic, the OIP would maintain a file on every person ever mentioned in any FOIA/PA case.  However, there is nothing in the record to establish that this is so and, to the contrary, Defendant has specifically averred that it did not have records of Plaintiff based on his involvement in any FOIA/PA litigation.  Merely monitoring FOIA/PA lawsuits does not mean that the OIP maintains records on any party involved or mentioned in those suits.

Therefore, Plaintiff's attempt to provide evidence of positive indications of overlooked materials relies on his own hypothesis as to what type of records might theoretically exist based on his understanding of the OIP's function rather than on any actual evidence of overlooked materials.  Defendant has averred that it performed a search that was reasonably calculated to uncover any responsive documents and that the search produced

no documents.  This determination is presumed to have been made in good faith, "which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  <u>Safecard</u>, 926 F.2d at 1200.  Plaintiff has provided nothing but his own conjecture to suggest that other documents may be out there.  Accordingly, the OIP's search, as described by the Deputy Director's declaration, was adequate.  Because no records were improperly withheld, summary judgment is appropriate.

### F.  <u>Counts IX-XI</u>

Plaintiff alleges in his Amended Complaint that the DOJ, without authorization by law or his permission, disclosed the DOJ Affidavit, prepared by DOJ agents and signed by him, to InvestorsBank in violation of Section (b) the Privacy Act.  (Am. Compl. at ¶¶ 40-84).  Counts IX through XI of the Amended Complaint contain related PA claims which stem from the disclosure of the affidavit.  Defendant has moved to dismiss these claims.

Again, it is important to set forth the procedural history of these claims in order to resolve this issue. Plaintiff's original Complaint, which he filed on March 24, 2003 in the United States District Court for the District of Columbia, contained, generally, the allegations presently contained in Counts IX-XI and nothing else.  Defendant moved to dismiss the Complaint, or in the alternative to transfer the case to this district, on August 20, 2003.  After Plaintiff served his Amended

Complaint on October 9, 2003, Defendant filed its Motion to Change Venue to the Western District of Pennsylvania, Motion to Dismiss Counts IX-XII of the Amended Complaint, and Motion for Extension of Time to File Answer ("Second Motion to Dismiss") on November 4, 2003.  The D.C. District Court denied both motions to dismiss without prejudice on February 18, 2004.  The case was subsequently transferred to this Court.

In its Motion for Summary Judgement with Regard to Counts I through VIII of Plaintiff's Amended Complaint and brief in support thereof, Defendant incorporates by reference the Second Motion to Dismiss and supporting briefs that it had previously filed in this case.  While the motion into which the Second Motion to Dismiss has been incorporated is thus a summary judgment motion, there is no indication that the Second Motion to Dismiss is intended to be treated as anything other than what it was filed as – a motion under Federal Rule of Civil Procedure 12(b)(6).  The issues addressed in the Second Motion to Dismiss and briefs in support thereof have never been briefed under Rule 56.  Accordingly, the Court will treat the incorporated Second Motion to Dismiss as a 12(b)(6) motion.

In deciding a 12(b)(6) motion, a district court should only dismiss a complaint "if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted

under any set of facts consistent with the allegations of the complaint." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998); ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). To this end, the defendant bears the burden of showing that no claim has been presented. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

To establish a violation of the PA, a plaintiff must demonstrate that the information at issue is a "record" contained within a "system of records" as those terms are defined in the PA.[12]  Once a plaintiff establishes that the information is covered by the PA, he must prove that the agency improperly disclosed the information. See 5 U.S.C. § 552a(b); Fisher v. National Institutes of Health, 934 F. Supp. 464, 468 (D.D.C. 1996). A plaintiff who is able to establish these elements may be entitled to declaratory and injunctive relief. See Fisher, 934 F. Supp. at 468. "If a plaintiff wishes to additionally recover monetary damages, he must demonstrate that the disclosure had an

---

[12] "System of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). "Record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4).

'adverse effect' on him and that the agency acted in an 'intentional or willful' manner." Id. (citing 5 U.S.C. §§ 552a(g)(1)(D), (g)(4)). See also Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992).

In its brief in support of the Second Motion to Dismiss, while this case was still pending in the D.C. District, Defendant argued that Plaintiff failed to state a claim upon which relief could be granted as to Counts IX through XI of the Amended Complaint because he did not allege that the DOJ Affidavit was contained in a "system of records" as the term is defined by the PA.[13]  However, in response, Plaintiff moved to supplement his Amended Complaint to aver that the DOJ Affidavit was contained within a "system of records" so as to cure this deficiency. (Supp. to Am. Compl. at ¶¶ 94-98).  Defendant filed a reply brief opposing this motion to supplement.  Nonetheless, Judge Sullivan, treating Plaintiff's motion as a motion to amend the Amended Complaint, granted the motion.  (June 18, 2004 Order (Doc. No. 18)).  Accordingly, Plaintiff's Amended Complaint has been cured of the deficiencies complained about by Defendant, rendering Defendant's argument moot.

Defendant does, however, make one additional argument. It argues that Counts IX-XI should be dismissed because Plaintiff

---

[13]     Defendant assumed arguendo that the DOJ Affidavit could be considered a "record."

failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The United States Supreme Court has made it clear that the filing, by an inmate, of an action in federal district court before completing the administrative remedy process violates the mandatory exhaustion requirement contained in the PLRA,[14] and requires the action to be dismissed. Booth v. Churner, 532 U.S. 731 (2001); Porter v. Nussle, 534 U.S. 516 (2002). The Third Circuit has followed the Court's reasoning in recent decisions. See DeHart v. Horn, 390 F.3d 262, 273 (3d Cir. 2004); Spruill v. Gillis, 372 F.3d 218, 226-27 (3d Cir. 2004); Concepcion v. Morton, 306 F.3d 1347, 1351 (3d Cir. 2002).

In Booth, a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint, "irrespective of the forms of relief sought and offered through administrative avenues." 532 U.S. at 741 n.6. The Court affirmed the dismissal of that action, which involved an inmate who had failed to exhaust beyond the first step of the three-level Pennsylvania prisoner

---

[14]   Under the PLRA, 42 U.S.C. § 1997e(a), exhaustion of administrative remedies in cases filed by prisoners is mandated:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

grievance system, because the plaintiff inmate had failed to complete exhaustion before bringing a lawsuit in federal court. Significantly, the Court closed the door on any potential arguments by inmates urging the futility of exhausting administrative remedies: "[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."  Id.

The Court, once again unanimous in its decision, emphasized again in Porter the mandatory nature of the PLRA exhaustion requirement.  It noted that, although dismissal of a claim not yet administratively exhausted was once within the discretion of the district court, courts no longer enjoyed that discretion in view of the PLRA and were required to dismiss the action: "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.  All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" 534 U.S. at 524 (citations omitted).  Moreover, the Court explained that the PLRA applies to "all inmate suits about prison life."  Id. at 532.

The allegations in Counts IX-XI pertain to the disclosure of the DOJ Affidavit to a private bank, not to the means by which it was obtained, and therefore did not relate to prison life.  Indeed, the disclosure resulted in Plaintiff and his

authorized agents being denied access to his financial accounts, with no impact upon the conditions of his imprisonment. Accordingly, the PLRA is not applicable.

Further, it is questionable whether an administrative remedy is even available under the PLRA.  The BOP Administrative Remedy Program set forth at 28 C.F.R. § 542.10, et seq., provides formal review of any issue relating to any aspect of the inmate's confinement.  However, Section 542.10(c) provides:

> There are statutorily-mandated procedures in place for . . . Freedom of Information Act or Privacy Act requests (28 C.F.R. part 513, subpart D).  If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.

While not going so far as to expressly refuse to accept FOIA/PA claims, this provision clearly contemplates that situations will arise where a prisoner's FOIA or PA claim is not to be resolved through the Administrative Remedy Program.  This is such a case. As stated, Plaintiff's claims in regard to Counts IX, X, and XI relate not to the conditions of his confinement, but rather, to the disclosure of his confidential information to third parties. As such, he was not required to exhaust any administrative remedies under the PLRA.

### G.  Count XII

The situation is very different, however, in regard to Count XII.  Plaintiff alleges in that count that agents of the

USMS and BOP, both components of the DOJ, subjected him to custodial interrogation, that the USMS has requested that prison officials interrogate Plaintiff in regard to this lawsuit, and that prison officials have advised him that the USMS intends to interrogate him again while he remains incarcerated. (Am. Compl. at ¶¶ 86-91). He therefore asks that the Court enter a writ of mandamus directing the DOJ not to interrogate Plaintiff in the future pertaining to any matter surrounding his financial accounts, his relationship with Keith Maydak, or his litigation without counsel present except in accordance with the Federal Rules of Civil Procedure. (Am. Compl., Count XII).

As discussed, the PLRA provides that the filing, by an inmate, of an action in federal district court before completing the administrative remedy process violates the mandatory exhaustion requirement of the PLRA and requires the action to be dismissed. See Booth, 532 U.S. at 731; Porter, 534 U.S. at 516. The Supreme Court has made it clear that Congress mandated completion of any prison administrative remedy process capable of addressing the inmate's complaint, "irrespective of the forms of relief sought and offered through administrative avenues." Booth, 532 U.S. at 741 n.6. As the Court stated in Booth, "[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. In Porter, the Court emphasized that the PLRA exhaustion requirement

39

applies to "all inmate suits about prison life."  534 U.S. at 532.
It further noted that, "[o]nce within the discretion of the
district court, exhaustion in cases covered by § 1997e(a) is now
mandatory.  All 'available' remedies must now be exhausted; those
remedies need not meet federal standards, nor must they be 'plain,
speedy, and effective.'" Id. at 524 (citations omitted).

        The allegations in Count XII, unlike those in Counts IX-
XI, clearly relate to prison life.  Plaintiff seeks, through his
mandamus action, to limit the DOJ's ability to contact him in
prison and to prevent certain interrogations.  Count XII concerns
issues related to Plaintiff's confinement, i.e., "harassment,
intimidation, and in custody interrogations." (Am. Compl. at ¶
92).  These claims, therefore, relate to the conditions of
Plaintiff's imprisonment and require Plaintiff to exhaust his
administrative remedies before filing suit.

        As discussed above, the BOP Administrative Remedy
Program set forth at 28 C.F.R. § 542.10, et seq., provides formal
review of any complaint which relates to any aspect of the
inmate's confinement.  Informal resolution is first attempted,
then the inmate may file a formal complaint with the Warden.  See
28 C.F.R. §§ 542.13, 542.14.  If the inmate is not satisfied with
the Warden's response, he or she may appeal the response to the
Regional Director.  In the event that the inmate is not satisfied
with the regional response, he or she may file a national appeal

40

with the Office of General Counsel in Washington, D.C.  See 28
C.F.R. § 542.15.  Appeal to the Office of General Counsel is the
final administrative appeal in the BOP.  See id.

        Plaintiff, therefore, has administrative remedies under
the Administrative Remedy Program and must exhaust those remedies
before filing suit.  While Plaintiff suggests that the BOP's
Administrative Remedy Program is not binding on the USMS and thus
could not provide the relief he is seeking (Supp. to Am. Compl. at
¶ 97), this argument has no merit.  First, Count XII makes it
clear that the BOP is at least part of the problem Plaintiff seeks
to address with his mandamus action.  Further, Plaintiff must
exhaust available administrative remedies "irrespective of the
forms of relief sought and offered through administrative
avenues."  See Booth, 532 U.S. at 741 n.6.  Moreover, the
potential futility of pursuing administrative remedies is
irrelevant under the PLRA.  Id.  Nevertheless, in any event, there
is no indication that the BOP's process could not provide adequate
relief for Plaintiff relating to the manner in which any
interrogation of him occurs while he remains incarcerated and
under the custody of the BOP.  Accordingly, summary judgment is
appropriate because Plaintiff has failed to exhaust administrative
remedies and thus has no right to maintain his suit seeking a writ
of mandamus under the PLRA.

41

**IV.**   **Conclusion**

For the reasons set forth above, summary judgment should be granted with respect to Counts II, III, IV, VII, and XII and denied with respect to Counts V, IX, X, and XI.  The Court will defer ruling on Count I until after the completion of the administrative review process.

An appropriate Order will be issued.


S/Alan N. Bloch
United States District Judge

Dated:   March 30, 2006

cc/ecf:   Paul Lee
Asst. U.S. Atty. Lisa Barsoomian
Asst. U.S. Atty. Rebecca Ross Haywood