IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL LEE,                          )
                                   )
            Plaintiff,             )
                                   )
        vs.                        )        Civil Action No. 04-1013
                                   )
UNITED STATES DEPARTMENT OF        )
JUSTICE,                           )
                                   )
            Defendant.             )


<u>MEMORANDUM OPINION</u>

BLOCH, District J.

Defendant has filed a second motion for summary judgment (doc. no. 76) in this action.  For the reasons set forth below, this motion is granted, and, accordingly, the remaining counts of Plaintiff's First Amended Complaint, Counts I, V, IX, X, and XI, are hereby dismissed with prejudice.

**I.      Background**

The Court, on March 30, 2006, issued an Order and Opinion disposing of Defendant's first summary judgment motion.  Since the facts of the case were set forth in detail in that Opinion, the Court will not do so again here.

By way of summary, Plaintiff has raised two types of claims in his First Amended Complaint ("Amended Complaint" or "Am. Compl.") which essentially fall under two categories.  Part I of the

1

Amended Complaint sets forth 8 counts in which Plaintiff alleges that Defendant violated the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") and the Privacy Act of 1974, 5 U.S.C. § 552a ("PA") by refusing to provide him with records that he requested from various agencies which are components of the Department of Justice ("DOJ") pursuant to those statutes.  In particular, Count I pertains to requests under the FOIA and PA to the United States Marshals Service ("USMS"); Count II pertains to requests to the Executive Office for United States Attorneys ("EOUSA"); Counts III and IV pertain to requests to the Federal Bureau of Investigation ("FBI"); Count V pertains to requests to the Federal Bureau of Prisons ("BOP"); and Count VII pertains to requests to the Office of Information and Privacy ("OIP").  Part II (Counts IX through XI and Count XII) of the Amended Complaint contains allegations regarding the interrogation of Plaintiff by DOJ agents and the disclosure of an affidavit by the DOJ to third parties.[1]

On March 30, 2006, the Court issued its Order and Opinion granting in part and denying in part Defendant's first motion for summary judgment.  In particular, the court granted summary judgment with respect to Counts II, III, IV, VII, and XII, and denied summary judgment with respect to Counts V, IX, X, and XI.  As to Count I, the Court held that Plaintiff must exhaust his administrative

---

[1]     On January 18, 2005, the Court granted Plaintiff's motion to voluntarily dismiss Counts VI and VIII of the Amended Complaint.

remedies via the administrative appeals process as to the USMS's second disclosure of records and deferred ruling on that count until after the completion of the administrative review process.   The Court retained jurisdiction over this count and stayed the proceedings pending the completion of the administrative appeal process.

Therefore, except for Count I, the Court has already entertained summary judgment challenges to all of the counts contained in the Amended Complaint.[2]   Nonetheless, the Court is mindful that summary judgment is recognized as the primary mechanism by which a district court will resolve the issues presented in FOIA/PA cases.  See Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993).  Accordingly, the Court has decided to consider Defendant's present motion regarding the remaining counts.

## II.   **Standard**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson

---

[2]   The Court does note, however, that, in regard to Counts IX through XII, Defendant merely incorporated by reference into its first motion for summary judgement a motion to dismiss and supporting briefs that it had previously filed in this case regarding those counts.  It therefore failed to address these counts under Rule 56 in its first summary judgment motion.

v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A factual dispute is material only if it might affect the outcome of the suit under the governing law.  Anderson, 477 U.S. at 248.  Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the nonmoving party." Id.  Thus, "the court should review all of the evidence in the record [and] ... must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations and internal quotation marks omitted) (noting that standard for judgment as a matter of law under Rule 50 is the same as that for summary judgment).  Determining credibility, weighing the evidence, and drawing legitimate inferences from the facts are jury functions, not those of a judge. Id.  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151.

Where the non-moving party will bear the burden of proof at trial, the moving party need not refute the essential elements of the non-movant's case, but need only point out the insufficiency of the non-movant's evidence offered in support of those essential elements.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rule 56 requires the non-moving party to go beyond the pleadings and

show, through the evidence of record, that there is a genuine issue for trial.  Id. at 324.

## III.   **Discussion**

Upon examination of the pleadings, briefs, statements of fact, and accompanying exhibits, and viewing the facts in a light most favorable to Plaintiff, this Court finds that there are no issues of material fact and that Defendant is entitled to judgment as a matter of law on Counts I, V, IX, X, and XI of the Amended Complaint.

### A.  **Count I**

As discussed more fully in the Court's March 30 Opinion, Plaintiff, on or around August of 2003, requested from the USMS all documents that relate to him, mention him, or otherwise list his name in 12 judicial districts and EOUSA headquarters.  The initial search for records pertaining to Plaintiff was conducted in the thirteen district offices identified in his request.  To aid in this search, each USMS office was supplied with Plaintiff's date of birth, social security number, and prisoner number, all of which were provided by Plaintiff.  (Declaration of Florastine P. Graham ("Graham Declaration" or "Graham Decl.") at ¶ 2, Ex. A, ¶¶ 3-4)).[3]

---

[3]     Most of the declarations in this case were filed as part of Defendant's Appendix of Exhibits in Support of Its Motion for Summary Judgment (doc. no. 79) ("Defendant's Appendix of Exhibits"). Many were also filed in regard to Defendant's first summary judgment motion.  For the sake of clarity, the Court will simply identify these declarations by the name of the person giving the declaration.

As a result of the search conducted by the specified USMS offices, 88 pages of records pertaining to Plaintiff were located in the Northern District of West Virginia and the Middle District of Pennsylvania in the Prison Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007, systems of records. (Id. at ¶ 6).

As discussed in the March 30 Opinion, the Office of General Counsel ("OGC") indicated that Plaintiff should complete an enclosed Certification of Identity form, DOJ-361 and return the form to the USMS and that upon receipt of that information, the OGC would correspond further with Plaintiff regarding his request. (Id., Ex. D). Although Plaintiff initially appealed this request to the FOIA/PA Appeals Officer for the OIP (Id., Ex. E), he did, on November 24, 2003, complete and return the DOJ-361 form. (Id. at ¶ 8, Ex. F).[4]

On December 15, 2003, the USMS released to Plaintiff 83 of the 88 records located in response to his request, 17 of which were disclosed with deletions pursuant to 5 U.S.C. § 552(b)(7)(C). (Id. at ¶ 9, Ex. G). Five documents were referred to the EOUSA. (Id.). Plaintiff filed an administrative appeal of the USMS's action on his request by a letter dated December 29, 2003, and the OIP, which is

_____

[4]     This appeal was dismissed as moot on January 30, 2004. (Graham Decl., Ex. H).

6

responsible for FOIA/PA appeals within the DOJ, subsequently closed this appeal by letter dated March 23, 2004, in response to Plaintiff's Amended Complaint. (<u>Id.</u> at ¶ 11, Exs. I, K).[5]

As discussed in the March 30 Opinion, Plaintiff alleges in Count I that the USMS's initial search of its records in response to his FOIA/PA request for all files referencing him was inadequate because it did not produce particular files that he believes are contained in the agency's records. (Brief in Opposition to the Government's Motion for Summary Judgment as to Count I ("Plaintiff's Brief as to Count I" or "Pl. Brief as to Count I") at 3). He expressly did not challenge any of the withheld documents (which he acknowledges in his opposition to the present motion).

However, in light of Plaintiff's statements in his Brief as to Count I, the USMS conducted a second search for records relating to Plaintiff. (September 29, 2005 Declaration of William E. Bordley ("2005 Bordley Decl.") at ¶ 6). The USMS searched by hand its files regarding Keith Maydak, which had already been collected based on a prior FOIA/PA request made by Maydak, for records regarding Plaintiff. Moreover, a second search was made in the Western District of Pennsylvania, the Eastern District of Kentucky, and the USMS Headquarters Investigative Services Division.

---

[5]     While Plaintiff served Defendants with the Amended Complaint on October 9, 2003, he failed to file it with the Court at that time.  It was not filed until July 12, 2004.  Nevertheless, Defendant acted in reliance upon the Amended Complaint from the date it was served.

The search including searching not only for records indexed to Plaintiff's name, but also for records on Plaintiff in the files of Maydak and another file regarding a threat made against Judge Alan Bloch. (Id. at ¶¶ 6-8).

Based on the additional searches, the USMS, by letter dated March 31, 2005, provided a supplemental response to Plaintiff's requests. (Id. at ¶ 9; Declaration of Arleta Cunningham ("Cunningham Decl.") at ¶ 4, Ex. A). The USMS informed Plaintiff that 488 pages of documents had been located which were responsive to his request. Of the 488 pages, 234 pages orginated with, or had information that originated with, other agencies, and these pages were referred to those agencies. The USMS disclosed 144 pages to Plaintiff in their entirety and 93 pages with information excised and withheld pursuant to various provisions of 5 U.S.C. § 552(b). The remaining 17 pages were withheld in their entirety. (2005 Bordley Decl. at ¶ 9; Cunningham Decl. at ¶ 6, Ex. A).

Under the unique facts presented in this case, the Court held that Plaintiff must exhaust his administrative remedies via the administrative appeals process as to the USMS's second disclosure of records and deferred ruling on Count I until after the completion of the administrative review process. In so doing, the Court noted that the nature of the allegations in Count I had completely changed since the original filing and/or service of the Amended Complaint. The initial focus of Count I was an alleged failure to produce any

8

records.  However, after serving the Amended Complaint, Plaintiff continued to go through the administrative appeals process not once, but twice, after the USMS had indicated that it had records to disclose.  In fact, in opposing the first summary judgment motion in this case, the thrust of his argument was not that no documents had been produced, but that the search was inadequate.  Subsequent to, and indeed based on, Plaintiff's Brief as to Count I, the USMS performed a subsequent search based on information presented in Plaintiff's brief.  A much larger number of documents were found, and some of these were withheld based on various provisions of 5 U.S.C. § 552(b).  Plaintiff has now opposed the withholding of some of these documents.

In its present motion, filed on April 20, 2007, Defendant asserts that Plaintiff failed to initiate, let alone complete, the administrative appeals process with regard to the second search conducted by the USMS.  (March 22, 2007 Declaration of William E. Bordley ("March 2007 Bordley Decl.") at ¶ 3).  It alleges that on May 2, 2006, the USMS sent Plaintiff a letter advising him that, in accordance with the Court's March 30, 2006 Order, he was entitled to file an administrative appeal regarding this second search.  The letter was sent both to Plaintiff's address at the Federal Correctional Institute – Elkton, where he is housed, and to Chrissy's Paralegal at 500 Lincoln Highway, North Versailles, PA

15137.  (Id. at ¶ 2, Ex. A; Ex. D to Defendant's Appendix of Exhibits).[6]

Plaintiff argues that he never received this correspondence from the USMS.  He states that he does not know why he did not receive it, but does state that it was sent to an address other than the one listed on the FOIA/PA request at issue in Count I.

This dispute is immaterial.[7]  The Court's March 30 Order clearly provided that Plaintiff was required to exhaust his administrative remedies in regard to the USMS's second search in regard to Count I.  He apparently took no action whatsoever to do so prior to the filing of the present motion.[8]  Indeed, while the procedural posture of this case is unusual, the Court notes that 28 C.F.R. §§ 16.9 and 16.45 provide that an appeal must be filed within

---

[6]    The Court notes that the latter address is the address to which mail was to be addressed to Plaintiff in this case according to paragraph 1 of the Amended Complaint.

[7]    The Court does note, however, that there is a general presumption that a letter properly directed and deposited with the post office will be received by the addressee in the normal course of the mail.  See Hagner v. United States, 285 U.S. 427, 430 (1932); In re: Cendant Corp. Prides Litigation, 311 F.3d 298, 304 (3d Cir. 2002); Makuch v. Federal Bureau of Investigation, No. Civ. A 99-1094 RMU, 2000 WL 915640 (D.D.C. Jan. 5, 2000).  Plaintiff does little to rebut this presumption.  Indeed, he completely ignores the fact that the letter was sent to Chrissy's Paralegal at the address to which he demanded mail to be addressed to him in this case.  Accordingly, the record supports the inference that Plaintiff did, indeed, receive the May 2 letter.

[8]    Plaintiff does allege that, subsequent to the filing of the present motion, on June 4, 2007, he filed an administrative appeal.

60 days of the date of the letter denying the request.  It is therefore not the date on which a letter explaining appeal rights is received that begins the appeal period, but the letter actually denying the request.

Obviously Plaintiff was not required, in this case, to respond within that time frame, since he, for good reason, did not believe that he had to file another appeal in response to the USMS's March 31, 2005 response since litigation had already commenced. However, he was aware of his need to file an administrative appeal on March 30, 2006 when the Court issued its Order and Opinion, and he failed to do so in a timely manner.  The USMS was not required by rule, statute, or the Court's Order to provide any further correspondence; the duty to file an appeal was Plaintiff's.  Indeed, the process for filing an appeal is contained in 28 C.F.R. §§ 16.9 and 16.45, and Plaintiff had already filed several previous appeals in regard to this same count, so he was well-aware of the procedure for doing so.

The Court acknowledges that it is not deprived of jurisdiction as a result of the lack of a timely administrative appeal as to the new search.  See McDonnell v. United States, 4 F.3d 1227, 1240 n.9 (3d Cir. 1993); Taylor v. United States Treasury Dep't, 127 F.3d 470, 476-77 (5th Cir. 1997).  Rather, failure to exhaust administrative remedies is a "prudential consideration." McDonnell, 4 F.3d at 1240 n.9.  However, given the fact that the

issues in regard to this count have completely changed, and given Plaintiff's complete lack of diligence in seeking an administrative appeal despite the Court's express order to do so until the filing of the present motion over a year later, prudence would dictate that any claims regarding the second search be dismissed.

This still, of course, leaves the issue of the first search, regarding which Plaintiff did properly exhaust his administrative remedies.  Plaintiff claims that the search was inadequate and it would, indeed, appear, based on the much larger volume of material obtained pursuant to the second search, that the first search may have been inadequate.  However, since the USMS has already addressed the issue of the adequacy of the first search by conducting the second search,[9] the adequacy issue is rendered moot. See Tri-Valley Cares v. Department of Energy, 203 Fed. Appx. 105, 107 (9th Cir. 2006); Walsh v. United States Dep't of Veterans Affairs, 400 F.3d 535, 536-37 (7th Cir. 2005); Anderson v. United States Dep't of Health & Human Servs., 3 F.3d 1383, 1384-85 (10th Cir. 1993); Lovell v. Alderete, 630 F.2d 428 (5th Cir. 1980).

Since the issue regarding the first search is now moot, and since Plaintiff failed to properly exhaust his administrative remedies as to the second search, no issues remain, and Count I should be dismissed.

---

[9]     There is no allegation that the second search was inadequate and, indeed, as evidenced by the 2005 Bordley Declaration, is was quite extensive.

12

**B.  Count V**

Plaintiff alleges that he made a request by letter to the BOP dated July 23, 2003, for records relating to himself that are held by Central Office Intelligence Section; the Special Investigation Supervisor ("SIS") offices at FMC Lexington, FCI Ray Brook, FCI McKean, FCI Elkton, FCI Allenwood, FCI Beckley, and FCI Cumberland; the General Counsel's Office; the Regional Counsel's Office at the Mid-Atlantic Regional Office ("MARO") and North East Regional Office ("NERO"); MARO; NERO; and Internal Affairs. (Am. Compl., Count V; Declaration of Ruthlee Gowins ("Gowins Decl.") at ¶ 2). In a declaration provided by Deborah A. Terrell, a paralegal specialist for the BOP, the BOP maintained that it first learned of the FOIA/PA request propounded by Plaintiff upon the agency through his filing of the Amended Complaint. (Declaration of Deborah A. Terrell ("Terrell Decl.") at ¶ 2).

On October 21, 2003, the BOP informed Plaintiff by letter that it had been brought to its attention through his Amended Complaint that he was claiming to have filed an information request with the BOP. It explained that, although the BOP had no record of such a request, it would process the request for records as described in the Amended Complaint. The letter further stated that the BOP estimated that to process Plaintiff's request, over thirty different locations would need to be searched, involving a minimum of seven hours, and the estimated search cost would be $324.

13

Plaintiff was further informed that in accordance with 28 C.F.R. § 16.11(i)(2), he needed to make advance payment of $324 by check or money order before the BOP could begin processing his request. Alternatively, Plaintiff was advised that he could narrow the scope of his search to minimize his payment obligation. (Terrell Decl., Ex. 5). Plaintiff neither provided the requested payment nor narrowed the scope of the search, so no further action was taken on his request by the BOP at that time. (Terrell Decl. at ¶ 3).

In its March 30 Order and Opinion, the Court denied Defendant's motion for summary judgment as to this count, holding that an issue of material fact existed regarding whether a records request was, in fact, sent and received by the BOP. Apparently in response to the Court's Order and Opinion, the BOP processed Plaintiff's request. On or around July 31, 2006, the BOP released 61 of the 101 pages it had located pursuant to its search in regard to Plaintiff's request. Of the 61 pages released, 41 were released in their entirety and 20 were released with excisions. (Gowins Decl. at ¶ 10, Attach. A).[10] All information withheld was withheld pursuant to 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(F). (Id. at ¶¶ 11, 12, Attachs. A, B).[11] Plaintiff appealed the withholding

---

[10]   There is a minor discrepancy between the Gowins Declaration and the July 31 letter. However, the Vaughn Index and the documents provided to the Court for *in camera* review confirm the figures set forth in the letter sent to Plaintiff.

[11]   The July 31 letter further provided that Plaintiff could not
(continued...)

of these documents by letter dated September 17, 2006 (Id., Attach. C), which was denied on April 5, 2007.   (Ex. I to Defendant's Appendix of Exhibits).

Plaintiff argues that Defendant has failed to show that the information not provided was properly withheld.[12]  The burden of demonstrating that a particular exemption applies is on the Government.   See Davin v. United States Dep't of Justice, 60 F.3d 1043, 1049 (3d Cir. 1995); McDonnell, 4 F.3d at 1241.   Here, Defendant claims that the information at issue was properly withheld pursuant to 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(F).

The Court has reviewed the Vaughn Index provided by Defendant and has reviewed the withheld information in camera.   The Court finds that while Section 552(b)(6) does not apply, the information withheld was all properly withheld pursuant to Sections (b)(7)(C) and (b)(7)(F).   Section (b)(7) provides that the FOIA requirements do not apply to matters that are records or information compiled for law enforcement purposes, but only to the extent that production would result in certain enumerated conditions. Subsection (C) applies when disclosure "could reasonably be expected

---

[11](...continued)
request access to the records at issue pursuant to the Privacy Act, but Plaintiff does not challenge that in this case.

[12]   Although Plaintiff challenged the adequacy of the search during the administrative appeal, he has not done so here, and, in any event, the Gowins Declaration establishes the adequacy of the search.

to constitute an unwarranted invasion of personal privacy." Subsection (F) applies where disclosure "could reasonably be expected to endanger the life or physical safety of any individual."

In determining whether the privacy exemption of Section 7(C) is appropriately invoked, the Court must engage in a de novo balancing test, weighing the public benefit which would result from the disclosure against the privacy interest and the extent to which it is invaded. See Cuccaro v. Secretary of Labor, 770 F.2d 355, 359 (3d Cir. 1985); Sussman v. United States Marshals Service, 494 F.3d 1106, 1115 (D.C. Cir. 2007). Names of private individuals are generally exempt from disclosure except in situations such as where such information is necessary to confirm or refute allegations of governmental impropriety. Sussman, 494 F.3d at 1115. In regard to withholdings pursuant to Section 7(F), in assessing the validity of an agency's assertion, the Court will, within limits, defer to the agency's assessment of danger. See Amro v. United States Customs Service, 128 F. Supp. 2d 776, 789 (E.D. Pa. 2001) (citing Gardels v. CIA, 689 F.2d 110, 1104-05 (D.C. Cir. 1982)).

Upon the Court's review of the Vaughn Index and its in camera review of the withheld documents, the Court agrees with Defendant's position that the material was properly withheld pursuant to Sections 7(C) and 7(F). In so finding, the Court notes that all of the records at issue were clearly compiled for law

enforcement purposes, as they relate primarily to investigations of wrong-doing by either inmates or staff at correctional facilities.

Document 1 relates to an investigation of an alleged sexual assault by Plaintiff on another inmate, and Defendant properly protected the privacy interests of the alleged victim and those involved in the investigation by redacting their names and personal information about them.  It also properly redacted the alleged victim's statements, as these would have constituted an invasion of his privacy and could have subjected him to retaliatory physical harm.  Document 2, which contains letters by Plaintiff raising various allegations, redacts merely the names of those involved in (and in some cases the subject of) the allegations.  The privacy interests of these individuals more than justified the limited redactions.  Likewise, document 3, an affidavit by Plaintiff, redacts merely the names of those involved.[13]

Documents 4 and 5 are actually one document, SIS report INM-5040.  Most of the information withheld in regard to Count V was withheld from this document.  While, as Plaintiff claims, entire pages have been withheld, this is appropriate.  This report is an investigation report regarding a work strike to protest the crack cocaine laws at FCI-Cumberland.  The material withheld included personal information and statements regarding various inmates and

_____

[13]    No public benefit as to disclosure of any of this material has been demonstrated.

investigators involved in the investigation. The personal information about these other individuals was clearly properly withheld because of privacy concerns, and the statements provided certainly could have reasonably been expected to subject the persons giving the statements to retaliatory physical harm. Again, no public benefit as to disclosure is demonstrated in the record as to this material. Indeed, the document as a whole contains sensitive information about a sensitive subject, and Plaintiff was provided all of the information contained therein to which he was entitled.

Since all of the material withheld was properly withheld under Sections 7(C) and/or 7(F), Plaintiff has received all of the information to which he is entitled pursuant to his request under the FOIA, and summary judgment is warranted as to this count.

### C. **Counts IX through XI**

As discussed in the March 30 Opinion, in regard to Counts IX, X, and XI, Plaintiff alleges the following: On August 22, 2002, while incarcerated in a federal penitentiary in Kentucky, Plaintiff was placed in handcuffs by agents of the BOP and brought to a room where a Special Investigative Assistant employed by the BOP and a Deputy United States Marshal were present. The agents instructed him that he was obligated to speak with and cooperate with them, but that the information he provided would be confidential and would not be disclosed. He was questioned regarding his financial accounts and relationship with Keith Maydak. As a result of the questioning,

18

a document entitled, "US Department of Justice Federal Bureau of Prisons Lexington KY 40511 AFFIDAVIT," ("DOJ Affidavit") was prepared by the agents and signed by Plaintiff at the direction of the agents.  (Am. Compl. at ¶¶ 51-59).  While the statements contained in the DOJ Affidavit at first appeared accurate to Plaintiff, he later determined that the statements, while accurate, were placed in an incorrect order that completely changed their meaning when placed in a clarified order.  (Am. Compl. at ¶¶ 60-61).

Subsequently, after the Marshals had learned of the location of Keith Maydak, agents of the DOJ provided, without Plaintiff's permission, a copy of the DOJ Affidavit to InvestorsBank, a financial institution maintaining accounts in Plaintiff's name.  (Am. Compl. at ¶ 65).  As a result of the disclosure of the affidavit, InvestorsBank refused to allow Plaintiff or his authorized agents access to accounts in his name.  Plaintiff was unable to obtain his funds for a year, expending over $300 to regain access.  (Am. Compl. at ¶ 66).

Plaintiff alleges that the disclosure of the DOJ Affidavit was made in violation of the Privacy Act, 5 U.S.C. 552a(b).  (Am. Compl. at ¶¶ 40-84).  As discussed above, Defendant previously moved to dismiss these claims, a motion which the Court denied.

Now, for the first time, Defendant seeks summary judgment as to these counts.  Defendant's primary argument is that the DOJ Affidavit is not subject to the PA, and that its disclosure

therefore did not violate the Act, because it was not maintained in a system of records that is indexed and retrieved by Plaintiff's name.  The Court agrees.

To establish a violation of the PA, a plaintiff must demonstrate that the information at issue is a "record" contained within a "system of records" as those terms are defined in the PA. Once a plaintiff establishes that the information is covered by the PA, he must prove that the agency improperly disclosed the information.  See 5 U.S.C. § 552a(b); Fisher v. National Institutes of Health, 934 F. Supp. 464, 468 (D.D.C. 1996).  A plaintiff who is able to establish these elements may be entitled to declaratory and injunctive relief.  See Fisher, 934 F. Supp. at 468.  "If a plaintiff wishes to additionally recover monetary damages, he must demonstrate that the disclosure had an 'adverse effect' on him and that the agency acted in an 'intentional or willful' manner."  Id. (citing 5 U.S.C. §§ 552a(g)(1)(D), (g)(4)).  See also Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992).

"Record" is defined in the PA as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph."  5 U.S.C. § 552a(a)(4).

"System of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).

Defendant does not deny that the DOJ Affidavit is a record, and the Court will assume that it is.  However, it argues that the affidavit was not contained in a system of records as required by the PA.  Specifically, it argues that the DOJ Affidavit was not contained within a system of records indexed and retrieved by Plaintiff's name.  In support of this argument, Defendant relies upon the Declaration of Joseph Moorhead ("Moorhead Decl."), which provides that the DOJ Affidavit was maintained not in any file pertaining to Plaintiff, but rather in fugitive investigation records relating to Keith Maydak.  (Moorhead Decl. at ¶ 16).  It further provides that the USMS did not have a fugitive investigation file pertaining to Plaintiff and that the affidavit was not maintained in a system of records retrievable by Plaintiff's name or personal identifier.  (Id.).  The affidavit was obtained in the course of investigating Maydak, including an investigation as to whether he committed additional crimes as a fugitive.  (Id. at ¶¶ 13-15).  Further, the June 26, 2007 Declaration of William Bordley ("June 2007 Bordley Decl.") provides that fugitive investigation

records maintained by the USMS are retrieved by the name of the fugitive, in this case, Maydak.  (June 2007 Bordley Decl. at ¶ 2).

Virtually this same issue was decided recently by the Court of Appeals for the District of Columbia Circuit in Sussman v. United States Marshals Service, 494 F.3d 1106 (D.C. Cir. 2007).  In that case, Michael Sussman, another associate of Keith Maydak, alleged that the USMS improperly revealed information about him in violation of the PA.  The USMS, in that case, argued that the record at issue was not maintained in a system of records retrievable by Sussman's name, but rather by Keith Maydak's name.  The court agreed that Sussman was required to show that the USMS improperly disclosed materials located in records retrievable by his own name, as opposed to someone else's name.  See id. at 1123.[14]  Accord Cuccaro v. Secretary of Labor, 770 F.2d 355, 360 (3d Cir. 1985); Bettersworth v. Federal Deposit Ins. Corp., 248 F.3d 386 (5th Cir. 2001).

The situation here is virtually the same.  The DOJ Affidavit is contained in records retrievable not by Plaintiff's name, but by Maydak's.  For the same reasons set forth in Sussman, Plaintiff, therefore, cannot maintain this action under the PA.

---

[14]    While the court in Sussman remanded to allow Sussman the opportunity to present evidence that materials from records which had been retrieved by his name were improperly disclosed because Sussman was unaware of such requirement, Plaintiff in this case was well-aware of his need to do so based upon Defendant's argument. His attempt to do so is discussed below.

Plaintiff does argue that "the agency's position that it could not and did not access records using [Plaintiff's] name is plainly absurd." However, the issue is not whether there is a mere capability of retrieving information about an individual which is indexed under his name; there must be an actual practice of retrieving information by that individual's name. See Henke v. United States Dep't of Commerce, 83 F.3d 1453, 1459-61 (D.C. Cir. 1996). Here, there is no indication that the DOJ Affidavit was ever retrieved by reference to Plaintiff's name. The information was disclosed in the context of investigating Maydak. (Moorhead Decl. at ¶ 16). In fact, there is no evidence that it was "retrieved" from the Maydak records to do this at all.

Plaintiff, at best, argues that there is an issue of fact as to whether the DOJ Affidavit was retrieved from the Maydak file. However, as just discussed, mere retrieval is not enough – there must be evidence that it was retrieved by Plaintiff's name, and that retrieving the information by Plaintiff's name happened not just one time, but that there was a practice by the USMS of doing so. See Henke, 83 F.3d at 1461. There is no evidence whatsoever of this, and, indeed, the declarations filed by Defendant establish the contrary.[15]

----

[15]   As Defendant points out, it does not dispute that the DOJ Affidavit was disclosed to InvestorsBank. Plaintiff's very vague statement that the disclosure occurred after Maydak had been apprehended is not at all inconsistent with this because, as set
(continued...)

Plaintiff also argues that he would need to take discovery to present evidence contrary to that contained in the declarations filed by Defendant.  However, discovery in PA cases is generally unnecessary so long as the agency's submissions are facially adequate.  Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978); Broaddrick v. Executive Office of the President, 139 F. Supp. 2d 55, 64 (D.D.C. 2001).  When this is the case, the district court "has discretion to forgo discovery and award summary judgment on the basis of affidavits."  Goland, 607 F.2d at 352. Here, the Court has exercised its discretion to forego discovery.

Defendant's affidavits are reasonably detailed, and there is no evidence that they were made in bad faith.  Plaintiff's whole argument is premised on his claim that the DOJ Affidavit was disclosed to the bank after Maydak's arrest on September 29, 2002. However, as discussed in the preceding footnote, this is completely consistent with what was contained in Defendant's affidavits, and it is unclear what further discovery would be needed on this point. Plaintiff does not in any way indicate how discovery would help him establish a practice of retrieving the affidavit from Maydak's file by reference to Plaintiff's name; at best, his discovery would do no more than confirm the single disclosure which is not in dispute.

---

[15](...continued)
forth in the Moorhead Declaration, the investigation into Maydak's activities continued well after his arrest in Canada, and the DOJ Affidavit was used in that context.

Plaintiff is not entitled to discovery merely to engage in a fishing expedition in an attempt to test Defendant's affidavits.  See Strang v. United States Arms Control and Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989); Broaddrick, 1139 F. Supp. 2d at 64.

The Court further notes that despite Plaintiff's claim that the DOJ Affidavit was disclosed to his bank in an attempt to freeze his account, the only "evidence" he has of this is his own statement in his own affidavit.  He has provided no bank records and no affidavits from bank agents to support his claim, and Plaintiff does not even have evidence of the date on which this supposedly occurred.  Plaintiff needed no formal discovery to at least contact his own bank and get information from them, or to request a subpoena if they were unwilling to cooperate, but he has taken no steps to obtain any information regarding the alleged disclosure, choosing instead to rely on his own bald assertions.  This neglect further confirms that discovery at this point is unwarranted.

Accordingly, the DOJ Affidavit is not subject to the PA, and summary judgment is appropriate in favor of Defendant on Counts IX, X, and XI.[16]

**IV.   Conclusion**

For the reasons set forth above, summary judgment is warranted with respect to Counts I, V, IX, X, and XI.

---

[16]   Because the Court has found that the DOJ Affidavit is not covered by the PA, it need not address Defendant's routine use argument.

25

An appropriate Order will be issued.


                                        s/Alan N. Bloch
                                        United States District Judge

Dated:     September 27, 2007

cc:        Paul Lee
           #01656-087
           FCI Elkton
           P.O. Box 10
           Lisbon, OH 44432
                and
           500 Lincoln Highway
           North Versailles, PA 15137

ecf:       Counsel of record